```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF KENTUCKY
               NORTHERN DIVISION AT COVINGTON
```

CIVIL ACTION NO. 2:16-CV-28 (WOB-JGW)

JANE DOE                                        PLAINTIFF

VS.              <u>MEMORANDUM OPINION AND ORDER</u>

NORTHERN KENTUCKY
UNIVERSITY, ET AL.                              DEFENDANTS

This matter is before the Court on various motions (Docs. 26, 53, 54, 70, 71, 72, 90, 98).

The Court heard oral argument on these motions on Tuesday, October 18, 2016.  (Doc. 106).  The Court now enters its Order explaining the reasons for the rulings that the Court made from the bench, and it further rules on several motions that were taken under submission.

**A. Motions to Intervene**

The motions to intervene by two news organizations (Docs. 72, 90) will be granted since the parties do not oppose the motions. Such intervention, however, is limited in scope to allow these entities only to oppose the motion for a gag order and any motions to seal (Doc. 53).

**B. Motion for Gag Order and to Seal**

Next, defendants move for a gag order to prevent counsel or the parties from communicating with the press regarding this case,

and to seal deposition transcripts and student records filed in this case. (Docs. 53, 54).

The speech of counsel participating in litigation before the courts may be regulated only where their speech poses a "substantial likelihood of material prejudice" to fair trial rights. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991).

Defendants argue that plaintiff's counsel's statements to the press "threatens Defendants' ability to obtain a fair trial by a panel of impartial jurors." (Doc. 53 at 1).

However, "[o]nly the occasional case presents a danger of prejudice from pretrial publicity. Empirical research suggests that in the few instances when jurors have been exposed to extensive and prejudicial publicity, they are able to disregard it and base their verdict upon the evidence presented in court." *Gentile*, 501 U.S. at 1054-55 (citation omitted).

This has been the experience of this Court in recent cases, including those that garnered more publicity than the matter at hand. First, many citizens do not regularly read the news, whether national or local. Second, there are numerous ways to guard against the potential effect of any such publicity. This Court has successfully utilized juror questionnaires to ascertain in advance of trial whether jurors have read news accounts of the case and, if so, whether they have formed any opinions about the

2

matter. And, of course, "voir dire can play an important role in reminding jurors to set side out-of-court information and to decide the case upon the evidence presented at trial." *Id.* at 1055.

The Court draws its jurors from twenty counties having a collective population of over 300,000. If a panel of forty jurors is called, in the Court's experience, fewer than ten would have encountered any publicity concerning this case.

For all these reasons, the Court concludes that the extraordinary measure of a gag order is not warranted.

As to the motion to seal, it presents issues involving the application of the Federal Educational Rights and Privacy Act of 1974, as amended ("FERPA"). That statute, however, clearly delineates how the parties may proceed to obtain/produce student educational records without violating the Act. *See* 20 U.S.C. § 1232(b)(2). *See also Edmonds v. Detroit Public Sch. Sys.*, Civil Action No. 12-CV-10023, at *3-4 (E.D. Mich. Nov. 19, 2012) (discussing mechanics of record production in accord with FERPA); *Doe v. Galster*, No. 09-C-1089, 2011 WL 2784159, at *9-11 (E.D. Wisc. July 14, 2011 (same); *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp.2d 288, 291-93 (E.D.N.Y. 2008) (same); *Santamaria v. Dallas Ind. Sch. Dist.*, Civil Action No. 3:06-CV-692-L, 2006 WL 1343604, at * (N.D. Tex. May 16, 2006) (same); *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp.2d 1019, 1024 (N.D. Ohio 2004) (same).

As the above cases indicate, records may be redacted to remove student's names and other identifying information, and the parties here have already entered into an Agreed Protective Order to protect the use of such records. (Doc. 18).

The Court has ordered the parties to submit an agreed order outlining appropriate procedures for dealing with FERPA records, failing which the Court will draft one.

Finally, given that compliance with these FERPA provisions should make sealing the student records unnecessary, the Court will deny the current motion to seal without prejudice. However, the Court will entertain future motions to seal on a "document by document" basis should privacy or other interests so warrant. *See Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, — F.3d —, No. 16-5055, 2016 WL 4410575, at *3 (6th Cir. July 27, 2016) (noting that shielding materials in court records should only be done if there is a "compelling" reason; that any seal must be narrowly tailored; and the court must analyze in detail, document by document, the propriety of secrecy, "providing reasons and legal citations").

**C. Motion for Sanctions and Motion to Compel**

Plaintiff moves for sanctions against defendants in connection with the deposition of Ken Bothof, NKU's Athletic Director. Specifically, plaintiff argues that defense counsel impeded, delayed, and frustrated the deposition of Bothof by

instructing him not to answer certain questions on the basis that the answers might reveal student information protected by FERPA. Plaintiff also moves to compel another deposition of Bothof so that plaintiff can get responses to these unanswered questions.

Some background is in order.[1] When plaintiff first requested dates for Bothof's deposition, defendants refused on the grounds of relevancy. Plaintiff then noticed Bothof's deposition for July 13, 2016. Defense counsel told plaintiff's counsel that defendants objected on the grounds of relevancy and would not be attending; however, they did not move for a protective order. Neither Bothof nor defense counsel appeared for the deposition, and plaintiff then filed a motion to compel.

The magistrate judge held a conference, found that Bothof's testimony was indeed relevant, and ordered that the deposition be taken. The magistrate judge also acknowledged the possibility of FERPA objections but noted that "the civil rules provide for limited circumstances under which a deponent should be instructed not to answer." (Doc. 39 at 3).

Plaintiff took Bothof's deposition on August 25, 2016. During the deposition, defense counsel instructed Bothof not to answer twelve times in response to questions about an alleged rape by members of NKU's basketball team. (Doc. 70-2, Bothof Depo.).

---

[1] These facts are taken from an Order issued by the then-assigned United States Magistrate Judge. See Doc. 39.

5

Under the Federal Rules of Civil Procedure, counsel may instruct a deponent not to answer a question in only three situations: (1) to preserve a privilege; (2) to enforce a limitation ordered by the court; or (3) to present a motion to terminate or limit under Rule 30(d)(3). Fed. R. Civ. P. 30(c)(2).

"If privilege is asserted as a reason for instructing a witness not to answer, it must be a recognized privilege." 7 James Wm. Moore et al., *Moore's Federal Practice* §30.43[2] (3d ed. 2002) (2016 Supp.).

"By its plain terms, FERPA does not create an evidentiary privilege." *Garza v. Scott and White Mem. Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005). *See also C.R. v. Novi Cmty. Sch. Dist.*, Case No. 14-14531, 2016 WL 126250, *6 (E.D. Mich. Jan. 1, 2016) ("Statutory confidentiality provisions such as those under FERPA and HIPAA do not create evidentiary privileges."); *Edmonds v. Detroit Pub. Sch. Sys.*, Civil Action No. 12-CV-10023, at *3 (E.D. Mich. Nov. 19, 2012) (FERPA does not create a privilege); *Doe v. Galster*, No. 09-C-1089, 2011 WL 2784159, at *9 (E.D. Wisc. July 14, 2011) (same); *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp.2d 288, 291 (E.D.N.Y. 2008) (same); *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977) ([FERPA] says nothing about the existence of a school-student privilege analogous to a doctor-patient or attorney-client privilege.").

6

Here, plaintiff's counsel's questions concerned whether Bothof was aware of allegations of rape against NKU basketball players; whether he asked the students if the allegations were true; whether the students were disciplined and not allowed to continue playing basketball; whether he knew what dorm the RA who reported the alleged rape lived in; and what the outcome of the investigation into the alleged rape was and whether it included any sanctions against the students.

None of these questions asked for the names of the students or other identifying information; indeed, several of the questions called for merely a "yes" or "no" answer. How the university handled other alleged sexual misconduct on campus is clearly relevant to plaintiff's claim of deliberate indifference under Title IX, and these questions broadly inquired into that issue. Further, defense counsel allowed Bothof to answer other questions which were on par substantively with the ones she instructed him not to answer.

A very similar situation arose in *Brown v. The Univ. of Kansas*, No. 10-2606-EFM-KGG, 2012 WL 612512 (D. Kan. Feb. 27, 2012). There, the plaintiff sued the University of Kansas when it expelled him from its law school after learning of his criminal history. The plaintiff, who was *pro se*, deposed the dean of the law school and asked him about his involvement in other disciplinary matters with students in comparable situations.

Defense counsel instructed the dean not to answer relying, in part, on FERPA.

Plaintiff moved to compel answers to his questions, and the Court held:

> **Defense counsel's instruction to the witness was improper.** Under Fed. R. Civ. Proc. 30(c)(2) "a person may instruct a deponent not to answer only when necessary to protect a privilege, to enforce a limitation ordered by the court, or to present a motion under Fed. R. Civ. Proc. 30(d)(3)." **Even if FERPA created a privilege allowing an educational institution not to disclose student identifying information, the question, answerable by a simple "yes" or "no," would not run afoul of that privilege.** The likelihood that defense counsel understood this is demonstrated by her allowance of the same question within an earlier time frame, which would have the same FERPA consequences. It is clear that defense counsel was asserting a simple relevance objection, which is improper.

*Id.* at *1 (emphasis added).

The court then granted the motion to compel to re-open the deposition to allow the plaintiff to "inquire about such details of the student disciplinary matters as do not require the disclosure of student identifying information." *Id.* at *2. *See also Lei Ke v. Drexel Univ.*, Civil Action No. 11-6708, at *7 (E.D. Penn. Mar. 20, 2014) (holding that defense counsel could instruct deponents not to answer only if answers would release personally identifiable information about any student).

Further, plaintiff correctly points out that Bothof's deposition testimony as a whole indicated that his knowledge of the alleged rape by NKU basketball players came, not from any

8

protected student records, but from other school officials, likely before any protected student records regarding the incident were even created. *See* "FERPA General Guidance for Students" at http://www2.ed.gov/policy/gen/guid/frco/ferpa/students.html (stating that information an official obtains from personal knowledge or has heard orally from others is not protected under FERPA).

Thus, the Court concludes that defense counsel improperly instructed Bothof not to answer these questions, and plaintiff is entitled to re-depose him to get answers, without seeking students' personally identifiable information. If defense counsel believes any question seeks such information, they may seek the Court's ruling on the question.

Plaintiff also seeks sanctions for defendants' conduct. Fed. R. Civ. P. 37(a)(5)(A) states:

> *If the Motion [to Compel] is Granted (or Disclosure or Discovery is Provided After Filing).* If the motion is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the reasonable expenses incurred in making the motion, including attorney's fees.

Such sanctions shall not be awarded if the opposing party's objection was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).

The Court concludes that defendants' conduct in instructing Bothof not to answer the questions at issue was not "substantially justified," given the above authority and the nature of the questions posed to him. The Court will thus grant the motion for sanctions, and defendants shall pay plaintiff's reasonable costs and attorney fees incurred in litigating the motion to compel and appearing at the two depositions.

### D. **Defendants' Motion for Partial Summary Judgment**

Defendants argue that plaintiff's claim for Title IX retaliation — Count Three of the Amended Complaint (Doc. 62) — fails as a matter of law because the document on which it is premised is inadmissible under Federal Rule of Evidence 408.

This rule provides that evidence of conduct or a statement made during compromise negotiations is inadmissible in civil cases to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(a)(2). Such evidence may be admitted, however, "for another purpose." Fed. R. Evid. 408(b).

The document in question is a November 12, 2015, letter from defendants' outside counsel to plaintiff's counsel, written on the heels of negotiations between plaintiff's counsel and NKU's in-house legal department. (Doc. 35). The letter addresses various matters, but the statement which forms the basis of plaintiff's retaliation claims is:

> The University is not in a position to respond to such false accusations as it takes its own obligation to protect [plaintiff's] educational records pursuant to the Family Educational Rights and Privacy Act seriously. **I am sure, however, you have advised [plaintiff] that, in the event she should file a legal action against NKU, she will have effectively waived such rights and the University will be permitted by law to rely on all records related to this incident in support of its defense.**

(Doc. 35) (emphasis added). Plaintiff characterizes this statement as threat made in retaliation for plaintiff's exercise of her rights under Title IX.

At the end of the letter, defense counsel proposes an alternative means of settling the dispute. *Id.* ("I encourage you to discuss this possible resolution with your client.").

Thus, the letter clearly constitutes "conduct or a statement made during compromise negotiations" about plaintiff's claims premised on NKU's handling of the events following plaintiff's rape.

Plaintiff argues that Rule 408(b) states that the court may admit such evidence "for another purpose." The Sixth Circuit and other courts have held that one such purpose is where the plaintiff relies on the compromise communications not to support the claims that were the subject of those discussions, but rather to provide a basis for a new claim premised on an entirely separate *wrong* committed in the course of those discussions. *See Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293 (6th Cir. 1997);

11

*Carney v. The American Univ.*, 151 F.3d 1090, 1095-96 (D.C. Cir. 1998).

Here, however, the above statement in defense counsel's letter is merely an accurate statement of the FERPA regulation that concerns the use of student records in Title IX litigation against an educational institution. *See* 34 C.F.R. § 99.31(a)(9)(iii)(B).  It did not constitute a separate "wrong," but stated what would happen as a mater of course if the action continued.  Therefore, it does not constitute an "adverse action" against her as required for a *prima facie* case of Title IX retaliation.  *See Varlesi v. Wayne State Univ.*, 642 F. App'x 507, 518 (6th Cir. 2016).

Therefore, the letter in question is inadmissible under Rule 408, and the motion to dismiss the retaliation count must be granted.


Therefore, having heard the parties, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) The motions to intervene (Docs. 72, 90) be, and are hereby, **GRANTED**, for the purposes described above;

(2) The motions for a gag order and to seal (Docs. 53, 54) be, and are hereby, **DENIED.**  As to the motion to seal, this denial is without prejudice;

12

(3) **On or before Monday, October 24, 2016**, the parties shall tender to the Court a proposed order regarding the production of student records, as discussed above. If the parties fail to do so, or if the Order is insufficient, the Court will enter its own order;

(4) Plaintiff's motion to compel (Doc. 71) and motion for sanctions (70) be, and are hereby, **GRANTED**. **Within thirty (30) days**, plaintiff's counsel shall submit a motion for fees and costs, accompanied by an appropriate affidavit and documentation;

(5) Defendants' motion for partial summary judgment (Doc. 26) be, and is hereby, **GRANTED**, and Count II of the Amended Complaint be, and is hereby, **DISMISSED**; and

(6) Plaintiff's motion to modify subpoena (Doc. 98) be, and is hereby, **GRANTED.**

This 24th day of October, 2016.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge