TO BE PUBLISHED IN FEDERAL SUPPLEMENT 3D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:16-CV-28 (WOB-JGW)

JANE DOE                                           PLAINTIFF

VS.                       **OPINION AND ORDER**

NORTHERN KENTUCKY
UNIVERSITY, ET AL.                                 DEFENDANTS

This matter is before the Court on the motion by defendant Northern Kentucky University ("NKU") to recuse and stay proceedings (Docs. 202, 203), defendant Kachurek's motion for recusal and to stay (Doc. 206), plaintiff's combined response thereto (Doc. 235), and NKU's reply (Doc. 239).

The Court has carefully reviewed this matter and finds that the parties' briefs adequately define the issues such that oral argument is unnecessary.  Thus, having given this matter close study and consideration, the Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

A detailed recitation of the background of this case is necessary to understand the posture of the motions before the Court.

This case was filed on February 12, 2016. Plaintiff alleges, *inter alia*, that NKU violated Title IX by responding with deliberate indifference after she was sexually assaulted by a fellow student during the fall semester of 2013. (Doc. 1-1). In her complaint, plaintiff alleged claims against NKU for violation of Title IX, Title IX retaliation, and breach of fiduciary duty; and against former NKU Police Chief Les Kachurek ("Kachurek") for Title IX retaliation. Further, NKU President Geoffrey Mearns ("Mearns"), Title IX Coordinator Kathleen Roberts ("Roberts"), and NKU Deputy Title IX Coordinator Ann James ("James") were sued under 42 U.S.C. § 1983 for violations of plaintiff's First and Fourteenth Amendment rights. *Id.*

Upon filing, as is the practice in this division, all discovery and other pretrial matters were referred to the assigned United States Magistrate Judge. (Doc. 2).

On March 9, 2016, the Court held its routine monthly docket call on this and several other cases, after which it issued a scheduling order setting discovery and dispositive motion deadlines. (Doc. 7). Discovery then proceeded under the supervision of the Magistrate Judge.

On July 29, 2016, defendants NKU, Mearns, Roberts, and James filed a motion for partial summary judgment on plaintiff's claim for Title IX retaliation. Defendants argued that the claim was

2

based solely on communications from NKU's outside counsel, the admission of which is barred by Fed. R. Civ. P. 408. (Doc. 26).

According to the Affidavit of Michael S. Jones, attached to plaintiff's Memorandum in Opposition to Defendants' Motions to Recuse and to Stay, Nicholas Gregg ("Gregg") — the undersigned's grandson — applied for and interviewed with plaintiff's counsel's law firm in August 2016. (Doc. 235-1 ¶ 11).

The firm, aware of this relationship, conducted research to determine if hiring Gregg would prevent the firm from appearing before the undersigned. *Id.* ¶ 15. The firm determined that so long as the requirements of 28 U.S.C. 455(b) were observed — *viz*, that Gregg did not act as a lawyer in the proceeding in question and had no interest that could be substantially affected by its outcome — his employment with the firm would not prevent its attorneys from appearing before the Court. *Id.*

The undersigned was aware that Gregg was applying to the firm and was already familiar with the dictates of 28 U.S.C. § 455 because, when Gregg entered his third year of law school and began seeking employment, the undersigned looked into these issues so he could advise his grandson accordingly. The undersigned advised his grandson that there need be no need for recusal if the provisions of 28 U.S.C. § 455(b) were observed, that is, he could not be "an attorney in the case" or have an interest that could be substantially affected by the outcome of the proceeding.

In any event, Gregg — who had taken the July 2016 Ohio bar exam but had not learned his results — began his employment with the firm as a law clerk on or about August 22, 2016, and the firm created an ethical wall so that Gregg would neither work on this case nor be exposed to information about it. *Id.* ¶¶ 16-17, 22-24, 29-30.

Discovery and briefing on various motions proceeded. On September 15, 2016, defendants NKU, Mearns, Roberts, and James filed a motion for partial dismissal of plaintiff's amended complaint. (Doc. 82).[1]

The Court held a formal oral argument on pending motions on October 18, 2016. (Doc. 106). On October 24, 2016, the Court issued a Memorandum Opinion and Order making rulings for and against both sides. (Doc. 108). The Court denied NKU's motion for a gag order, based on well-settled and binding law. *Id.* at 1-4.[2] The Court also granted sanctions against NKU for certain obstructive actions by counsel in a deposition, about which they

---

[1] The Amended Complaint was filed without objection by the NKU defendants, who stated that they did not object to the amendment so long as their right to pursue their motion for partial dismissal was preserved. *See* Doc. 84, Transcript at 8, 19.

[2] In fact, during oral argument, counsel for both the NKU defendants and Kachurek withdrew their motions for a gag order, recognizing that such an order would be inappropriate and noting that compliance with FERPA would ensure the privacy of the student information in question. (Doc. 121, Transcript at 9-12).

had previously been cautioned by the Magistrate Judge. *Id.* at 4-10.

Next, the Court granted the NKU defendants' motion for partial summary judgment, dismissing plaintiff's claim for Title IX retaliation based upon correspondence from NKU's outside counsel. *Id.* at 10-12.

Approximately a week later, the Court issued another Memorandum Opinion and Order. (Doc. 115). In this Order, the Court ruled in the NKU defendants' favor in all respects. First, the Court dismissed plaintiff's claim for violation of substantive due process based upon the insufficiency of her pleadings. *Id.* at 1-3.

Second, the Court held that even absent such deficiencies, the NKU individual defendants were entitled to qualified immunity from such claims. *Id.* at 3-5.

Third, the Court ruled in defendant Mearns' favor on plaintiff's First Amendment claim, also dismissing it with prejudice. *Id.* at 6-7.

These rulings on the constitutional claims removed any possibility that plaintiff could recover punitive damages from the NKU defendants.[3]

---

[3] The Court does not include Kachurek in the NKU defendants group, as he is no longer employed at NKU and has separate counsel. Plaintiff does allege a claim against Kachurek for defamation,

Finally, the Court dismissed plaintiff's claim for breach of contract against the NKU defendants. *Id.* at 7-8.[4]

These rulings came months after the undersigned's grandson began employment with plaintiff's counsel's firm, and the Court was satisfied that the provisions of § 455(b) were being observed.

Moving forward, in a hearing held on December 7, 2016, the Court stressed the national importance of the issues raised in Title IX cases such as this, both for alleged perpetrators and their alleged victims. (Doc. 140, Transcript at 2-3). The Court further noted:

> I don't like to see NKU getting all this bad publicity. Before any of your time, I was one-time president of the Chamber of Commerce, and we had a battle royal[e] to get that university established up here. Lexington fought it. U.K didn't want the competition. Louisville fought it for the same reason. We fought a battle that went on for years until we finally got this university here. And it's done well. It's been a real credit to the community. So whatever these issues are, they've got to be resolved.
>
> Both of you, both sides, are at fault for not recognizing this and engaging in a lot of pettiness.

*Id.* at 3.

---

which allows for punitive damages in Kentucky. Kachurek's separate motion for summary judgment is currently under advisement.

[4] Were the undersigned to recuse, these rulings would be subject to rescission. *See In re The Aetna Cas. and Surety Co.*, 919 F.2d 1136, 1145-46 (6th Cir. 1990).

6

Addressing the question of the parties' settlement efforts before the Magistrate Judge, and plaintiff's demand in particular, the Court stated:

> Let me say a word about settlement. I know the magistrate has talked to you about ways of settling this. If you folks want to settle, the Court will be glad to assist you, summary jury trial or some other method. If you don't want to settle, just say so. Don't make a demand that's outlandish and totally frivolous on its face. Just say I'll take what the jury gives me, if they give me anything.
>
> Case is not worth $4 million. If they returned a verdict of $4 million, I'd have to set it aside.

*Id.*

On January 10, 2017, the Court issued another ruling, dismissing various claims against defendant Kachurek. (Doc. 143).

Thereafter, discovery was completed and the parties filed dispositive motions on March 1, 2017. (Docs. 164, 165).

On March 21, 2017, the undersigned attended a meeting of the Northern Kentucky Inn of Court. Prior to being seated for dinner, the undersigned encountered Jeffrey Mando, a local attorney and social acquaintance of the undersigned who regularly appears before the Court. Noting that Mr. Mando had recently entered an appearance in this case, the undersigned spoke generally about settlement efforts and mentioned that his grandson had taken a job at Kevin Murphy's law firm after graduating law school. The undersigned also informed Mr. Mando that the statute was being

satisfied in that the grandson was not working on this case and that the firm had created an ethical wall to screen him from it.

In the meantime, the Court had been studying the pending motions for summary judgment. (Docs. 178, 179). The Court had also been reviewing deposition transcripts as they were filed over the preceding months.

The ever-diligent Magistrate Judge scheduled yet another settlement conference for March 30, 2017. (Doc. 182). It is the undersigned's understanding that the fact of his grandson's employment at plaintiff's counsel's firm was raised during this conference, with counsel for NKU indicating that it was prepared to file a motion to recuse on that basis. The settlement conference was unsuccessful, and the matter returned to the Court to proceed. (Doc. 187).

The NKU defendants filed their reply brief in support of their motion for summary judgment on April 5, 2017, (Doc. 195), which the Court promptly reviewed.

Having already studied the record and the applicable law over a period of months, it was apparent to the Court that there were numerous material issues that should be resolved by a jury. The Court thus prepared a brief opinion denying the motion for summary judgment. (Doc. 198). That order was docketed at 2:07 p.m. on April 6, 2017.

At 6:44 p.m. that same day, the NKU defendants filed their motion to recuse. (Doc. 202).[5]

*Analysis*

A. **The Recusal Statute**

28 U.S.C. § 455 provides a statutory basis for recusal of federal judges. In pertinent part, the statute states:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall disqualify himself in the following circumstances:
>
> \*\*\*
>     (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:
>
> \*\*\*
>
>         (ii) Is acting as a lawyer in the proceeding.
>
>         (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

B. **Section 455(b)**

Although defendants originally invoked both subsections (a) and (b) in their motions to recuse, in their reply brief they abandon reliance on subsection (b). *See* Doc. 239 at 1-2. The Court infers from this that the evidence provided by plaintiff in

---

[5] Defendant Kachurek filed a separate motion to recuse and to stay on April 7, 2017, adopting NKU's arguments. (Doc. 206).

response to defendants' motion has assuaged any concerns regarding the propriety of my grandson's employment under subsection (b).

This conclusion is supported by the record and the law. Courts interpreting § 455(b) regularly hold that the employment of a child of a judge — one degree closer in relation than a grandchild — in a law firm representing a party before the Court does not require recusal where the child is not a partner and is not working on the case. *See, e.g., Benko v. Judges' Retirement Sys.*, No. 97-1241, 1998 WL 199798, at *4 (6th Cir. 1998); *In re Kansas Public Employees Retirement Sys.*, 85 F.3d 1353, 1364-65 (8th Cir. 1996); *Faith Temple Church v. Town of Brighton*, 348 F. Supp.2d 18, 19-21 (W.D.N.Y. 2004); *United States v. Edwards*, 39 F. Supp.2d 692, 713-15 (M.D. La. 1999); *Wilmington Towing Co., Inc. v. Cape Fear Towing Co., Inc.*, 624 F. Supp.2d 1210, 1211-12 (E.D.N.C. 1986); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 463-64 (5th Cir. 1977).

A moment's reflection demonstrates that this rule is necessary if the relatives of judges are not to be penalized by the judge's position. There are many district courts where only one judge sits. This division was one until I took senior status in 2001. If the position advanced by defendants were valid, a judge would be disqualified if he had a civil rights case involving a firm where his niece or nephew was an attorney in the tax department.

Further complicating matters if the fact that many law firms are now mega-firms having several hundred associates and offices in various cities.

The statute covers parents, grandparents, sons, daughters, aunts, uncles, nephews, nieces, first cousins, and maybe others, and the spouses of all of them. Under movants' approach, a judge would recuse if any of the relatives were employed as attorneys by any firm in the case, wherever located and in whatever department, even though the relative had no involvement in the case before the Court. Section 455(b) is intended to cover such chaotic situations. It doesn't require notice because notice would be impractical.

Here, the sworn testimony is that an ethical wall was immediately erected within the firm in question to screen my grandson from this case; he has not worked on this case; and because he is an employee and not a member or partner, he has no interest that would be substantially affected by the outcome of this matter. (Doc. 235-1, Jones Affidavit).

### C. Section 455(a)

As mentioned, defendants' reply brief shifts reliance to § 455(a). This provision "requires a judge to recuse if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015)

11

(internal quotations and citations omitted).  This standard is objective and is not based on the subjective view of a party. *Wheeler v. Southerland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (citation omitted).

"Section 455(a) must not be so broadly construed that recusal is mandated upon the merest unsubstantiated suggestion of an appearance of impropriety, personal bias or prejudice." *Ragozzine v. Youngstown State Univ.*, No. 4:13cv750, 2014 WL 1153715, at *3 (N.D. Ohio Mar. 20, 2014) (citation omitted), *aff'd, Ragozzine*, 783 F. 3d at 1079.  "The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice."  *Id.*

Defendants strenuously argue that recusal is required because the undersigned did not inform the parties that Gregg had been hired by the firm when it occurred, citing dicta from *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847 (1988).  *See id.* at 868 (stating that vacating decisions made by judges at a time when they should have recused "may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered").

This argument does not advance defendants' position.  First, there were no "possible grounds for disqualification" to disclose.  That is, when Gregg became employed at the firm, the undersigned

made inquiries of him to assure himself that the requirements of § 455(b) were met, and it did so at periodic intervals thereafter to assure that such compliance continued. Such an investigation by a judge to assure that the requirements of § 455 are met is appropriate. *See United States v. Morrison*, 153 F.3d 34, 48 n. 4 (2d Cir. 1998).

Second, and more importantly, the Sixth Circuit has expressly rejected the same "duty to disclose" argument propounded by defendants.

In *Ragozzine*, the plaintiff brought suit against Youngstown State University ("YSU") for employment discrimination after he was denied tenure. The district court granted summary judgment to YSU on all claims. 783 F.3d at 1079.

The plaintiff then filed a motion to disqualify the judge based on a previously undisclosed dating relationship between the judge and a tenured YSU faculty member, arguing that the relationship created an appearance of impropriety under § 455(a). *Id.*

The Sixth Circuit first held that the district judge had correctly determined that a "relationship with a tenured member of a university faculty, without more, would not necessarily cause a reasonable person to question a judge's impartiality regarding all matters involving the university." *Id.*

Plaintiff also argued that recusal was required because the judge had not disclosed the relationship as a potential conflict so that the parties could decide whether to waive the conflict or seek recusal. The Court stated:

> Next, **the district court was not required to disclose the possible conflict to the parties, contrary to Ragozzine's argument**. . . . In advocating for the required disclosure of possible conflicts, Ragozzine's counsel cites his experience of other judges having disclosed possible conflicts. When a judge makes a determination that her impartiality could *not* reasonably be questioned, **the judge is permitted to disclose the matter to counsel in order to settle the matter or to permit a motion to recuse. But Ragozzine points to no statutory or judicial authority requiring a judge to do so.**

*Id.* at 1080 (bold added).

The Court thus held that the district court, having correctly determined that its impartiality could not reasonably be questioned, had no duty to disclose and recusal was not required. *Id.* at 1080-81.

Finally, the Sixth Circuit and other respected authorities note that "[a]lthough a judge is obliged to disqualify himself when there is a close question concerning his impartiality, . . . **he has an equally strong duty to sit where disqualification is not required**." *United States v. Angelus*, 258 Fed. App'x 840, 842 (6th Cir. 2007) (emphasis added) (citations omitted). *See also* 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3549 (3d ed. 1998 & April 2017 Update) ("Although some observers have concluded that Section 455(a) abolished the

duty to sit in federal court, it is more accurate to say that it alters that duty. **Accordingly, a federal judge still has a duty to sit unless there are grounds for recusal.**") (emphasis added).

*Conclusion*

"Judicial impartiality and independence are serious matters." *Fharmacy Records v. Nassar*, 572 F. Supp.2d 869, 876 (E.D. Mich. 2008) (citing *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007)). The undersigned could not agree more with that statement.

On December 10, 1979, I took the oath of office to "faithfully and impartially discharge and perform all the duties incumbent on me" as a federal judge. *See* 28 U.S.C. § 453. In the nearly forty years since that day, I have upheld that oath to the best of my abilities, every day, in every case.

Therefore, I will fulfill my duty to see this case through to its conclusion, whatever that may be, without partiality towards any party.

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that the motions to recuse and to stay (Docs. 202, 203, 206) be, and are hereby, **DENIED.**

15

This 2nd day of May, 2017.



Signed By:
*William O. Bertelsman* W.OB
United States District Judge