IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:16-CV-28 (WOB-JGW)

JANE DOE                                                              PLAINTIFF

V.

NORTHERN KENTUCKY UNIVERSITY                                          DEFENDANTS
LES KACHUREK

### MEMORANDUM OPINION AND ORDER

This dispute between Plaintiff Jane Doe and Defendant Les Kachurek arises out of Plaintiff's larger claim for Title IX violations against Northern Kentucky University. In her amended complaint, Plaintiff brought five counts against Kachurek: Counts II and V for a § 1983 violations; Count IV for Title IX retaliation; Count VI for defamation; Count VII for breach of contract; and Count VIII for punitive damages. This Court dismissed the § 1983 claims, breach of contract claim, punitive damages claim, and defamation claim earlier in this case. (*See* Docs. 115, 143, 293). Thus, the only active claim against Kachurek is Count IV of Plaintiff's amended complaint, seeking damages for retaliation under Title IX.

Kachurek now moves for summary judgment (Doc. 164) and Plaintiff moves to disregard matters first raised in Kachurek's reply brief. (Doc. 214). The matter being fully briefed, the Court heard oral argument on the subject on August 1, 2017. Being fully advised, the Court now issues this Memorandum Opinion and Order.

**I. Facts**

Les Kachurek was the campus police chief at Northern Kentucky University (NKU) from 2015 to 2016. On September 1, 2015, Kachurek received a phone call from Sarah Sidebottom in the NKU General Counsel office. (Doc. 30, PageID# 224). Sidebottom and Kachurek discussed

1

Jane Doe, and Sidebottom said Doe was "slandering" Student M—the student who NKU found responsible for sexually assaulting Doe. (Doc. 30, PageID# 224). But the content of the alleged slander was not clear from that conversation. (Doc. 30, PageID# 225).

Immediately after the phone call, Kachurek met with two male students who described themselves as "confidential informants." (Doc. 30, PageID# 208, 225). They were friends with Student M. (Doc. 30, PageID# 208). The informants told Kachurek that "the victim and some of her supporters were slandering the perpetrator for allegedly using and selling illegal drugs."[1] (Doc. 30, PageID# 209).

Following that meeting, Kachurek wrote an email to his 21 subordinates and his immediate superior. (Doc. 30-2, PageID# 342). In pertinent part, the email stated:

> . . . Today, a female student has been seen on campus carrying a mattress on her back. **Ostensibly, this is her way of expressing her displeasure over the outcome of an administrative hearing, where she accused a male student of sexually assaulting her more than a year ago. Moreover, she has been publicly slandering the male student.** Any slandering is not our concern, unless it segues into a clear criminal or Student Code of Conduct offense. However, we are obligated to observe and preserve the First Amendment rights of the protestor. . . .

(Doc. 30-2, PageID# 342).

Kachurek said he wrote the email because he did not want his officers to react improperly to the sexual violence demonstration. (Doc. 30, PageID# 227, 257). He acknowledges that he could have added that NKU found Student M responsible for sexual assault, but did not. (Doc. 30, PageID# 205). And he understands how the reader could believe Jane Doe was slandering Student M regarding sexual assault. (Doc. 30, PageID# 206). He believes his language could have been

---

[1] Doe denies that she ever accused Student M of using or selling drugs. (Doc. 102-1, PageID# 1518).

"more lawerly" (Doc. 30, PageID# 215), and that "if I had a do-over, I would have inserted an 'alleged' in front of slandering, or 'allegedly' in this case." (Doc. 30, PageID# 202). In subsequent months, Kachurek told his superiors he "regrets writing that the female student was slandering the male student." (Doc. 30, PageID# 273).

Doe claimed Kachurek's email "worsened" her "emotional damage." (Doc. 102-1, PageID# 1528). Yet she says she did not suffer any reputational damage from the email—or at least "nothing [she] could think of." (Doc. 102-1, PageID# 1530).

Approximately four months after Kachurek's email, Doe filed her initial complaint in this case, which included a Title IX retaliation claim against Kachurek. (Doc. 1-1). Following discovery, on the final day to file for summary judgment under the Court's schedule, Kachurek moved for summary judgment on the now-dismissed defamation claim only. (Doc. 164). Kachurek's counsel later stated she "inadvertently" did not move for summary judgment on the Title IX retaliation claim. (Doc. 193). Instead, counsel included arguments for summary judgment in her reply brief. (*Id.*). In response, Plaintiff moved to disregard any motion for summary judgment on the Title IX retaliation claim, as it was first raised in a reply brief. (Doc. 214).

## II. Analysis

### A. Procedural concern.

Federal Rule of Civil Procedure 56(f) states:

> After giving notice and a reasonable time to respond, the court may:
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

FED. R. CIV. P. 56(f).

Here, the parties have briefed the Title IX retaliation issue and conducted an oral argument on the matter. (Doc. 214; Doc. 234 at 14-15; Doc. 243; Doc. 286). Thus, the parties had notice that the Court may address the Title IX retaliation claim, had an opportunity to respond, and the Court may proceed to considering the merits of the Kachurek's motion for summary judgment.

**B. Individual liability for a Title IX retaliation claim.**

There is no explicit or implicit cause of action for retaliation under the text of Title IX. *See* 20 U.S.C. § 1681. Instead, Plaintiff bases her Title IX retaliation claim on a regulation. *See* 34 C.F.R. § 100.7(e). That regulation states that "no recipient [of federal funds] *or other person* shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured [by this Act]." *Id*. (emphasis added).

The regulation was implemented under Title VI, which prohibits discrimination by those receiving federal funds. Aside from the quoted portion, the regulation discusses the proper conduct of a Title VI investigation. Plaintiff argues that even though § 100.7(e) is a Title VI regulation, it applies to Title IX because 34 C.F.R. § 106.71 incorporates all procedural regulations from Title VI as applicable to Title IX.

Only two cases appear to have previously addressed this issue, and both held that § 100.7(e) did not allow for individual liability under Title IX. *Clay v. Bd. of Trustees of Neosho County Community College*, 905 F. Supp. 1488, 1496 (D. Kan. 1995); *Bowers v. Baylor U.*, 862 F. Supp. 142, 146 (W.D. Tex. 1994). In reaching this conclusion, both *Clay* and *Bowers* rejected § 100.7(e), and relied instead on the general proposition that there is no individual liability under Title IX. *Id*. (citing to *Doe v. Petaluma City School District,* 830 F.Supp. 1560 (N.D.Cal.1993) for the proposition that Title IX does not permit individual liability).

*Bowers* involved a suit against a university and three employees in their individual and official capacities. The Court emphasized that 34 C.F.R. § 106.71 incorporates *only* the procedural regulations of Title VI. *Bowers*, 862 F. Supp. at 146. It analyzed § 100.7(e) and held that it "is not a procedural provision," thereby making it inapplicable to Title IX. *Id*. That meant there was no contrary authority to rebut the proposition that Title IX does not permit individual liability, and the Court applied that concept to the Title IX retaliation context. *Id*.

In *Clay*, the Plaintiff sued a university and its athletic director in his individual capacity, and included a Title IX retaliation claim. The Court held that Title IX does not permit individual liability, even for a retaliation claim. *Clay*, 905 F. Supp. at 1496. The *Clay* decision did not engage in the procedural-substantive discussion that *Bowers* had a year earlier. Instead, the *Clay* Court merely noted that it was "more persuaded by the analysis" in cases denying Title IX individual liability in non-retaliation contexts than by § 100.7(e). *Id*.

A decade after *Bowers* and *Clay*, the Supreme Court held that a retaliation claim *against a funding recipient* need only be based on the statutory text of Title IX, and not 34 C.F.R. § 100.7(e). *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005)(retaliation claim was only against funding recipient, and not an individual defendant). But the Court did not address whether there is a cause of action against an individual defendant pursuant to § 100.7(e).

Nor has the Sixth Circuit addressed the issue. As Plaintiff points out (Doc. 234 at 14-15), in *Varlesi v. Wayne State Univ.*, 643 F. App'x. 507, 509 (6th Cir. 2016) the Sixth Circuit affirmed a judgment awarding a Plaintiff $848,690 against a public university and three university employees. Reviewing the record in that case, the Plaintiff included a Title IX retaliation claim against the defendant university and the three individuals *in their official capacity*. The Sixth Circuit has held that "[w]hile personal capacity suits seek to impose personal liability upon a

5

government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)(internal citations and quotation marks omitted). Therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because the claim in *Varlesi* was against the individuals in their official capacity, the individuals never addressed whether Title IX retaliation claims were limited to merely the recipients of federal funds. Thus, *Varlesi* is factually distinct from this case, and does not elucidate the issue.

Instead, the Court is left to analyze whether the regulation—§ 100.7(e)—is procedural or substantive. Like *Bowers*, the Court finds that allowing § 100.7(e) to create a cause of action for retaliation would make it a substantive regulation. Because a Title VI regulation like § 100.7(e) only applies to Title IX if it is procedural, § 100.7(e) cannot create a cause of action for retaliation under Title IX.

Without any countervailing authority, this Court must then view Plaintiff's Title IX retaliation claim under the Sixth Circuit's case law holding that "only recipients of federal funds may be liable for damages under Title IX." *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999)(citing *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999)). As Kachurek is an individual and not a recipient of federal funds, Doe cannot pursue an action against him under Title IX.

Further, as stated at the hearing on August 1, 2017, the Court finds no evidence that Kachurek had a retaliatory motive in the actions complained of.

### III. Conclusions

Therefore, having reviewed the matter, and being otherwise advised, **IT IS ORDERED** that:

- Kachurek's Motion for Summary Judgment is **GRANTED** (Doc. 164);

- Plaintiff's Motion to disregard matters first raised in a reply brief is **DENIED** (Doc. 214);

- Because this opinion removes the final pending claim against Kachurek, Kachurek's Motion in Limine will be **stricken as moot**. (Doc. 228).

This 2nd day of August, 2017.

Signed By:
William O. Bertelsman  WOB
United States District Judge